CHARTER BANK AND TRUST OF ILLINOIS, Plaintiff, v. EDWARD HINES LUMBER COMPANY, Defendant-Appellee (Joseph M. Giampa *et al.*, Plaintiffs-Appellants; Mark Sisson *et al.*, Defendants).

Second District No. 2—91—1095

Opinion filed August 14, 1992.—Rehearing denied October 7, 1992.

Andrew B. Spiegel, of Wheaton, for appellants.

Thomas A. Eckhardt and John W. Demling, both of Demling & Eckhardt, of Glen Ellyn, and Daugherty & Addison, of Itasca, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs Joseph Giampa and Robert Walcott (plaintiffs) appeal the judgment of the circuit court of Du Page County for foreclosure of a mechanic's lien in the amount of $25,791.90 in favor of defendant Edward Hines Lumber Company (Hines). Plaintiffs contend that (1) Hines forfeited its mechanic's lien by failing to comply with section 34 of the Mechanics Lien Act (Act) (Ill. Rev. Stat. 1989, ch. 82, par. 34); (2) Hines is bound by its admission that its interest in the property was inferior to that of plaintiffs' predecessor in title; and (3) the court erred in determining the amount of the lien.

Plaintiff Charter Bank & Trust (Charter) initiated this action by filing a complaint for mortgage foreclosure against Mark Sisson. Sisson was the owner of and general contractor for a large single-family home in Itasca. Hines and other mechanics' lien claimants were named as defendants.

Charter filed its complaint February 7, 1990, and Hines was served with summons through its agent on March 14, 1990. Hines filed its appearance and answer April 12, 1990. Paragraph 3 of the answer states in relevant part:

> "As to the allegations of 3l, this defendant asserts that it has an interest in the subject real estate as of July 26, 1989, pursuant to the Memorandum of Judgment recorded on that date as Document No. R89—089641. Defendant acknowledges that its interest is subordinate to the interest of plaintiff, and asserts that its interest is superior to any interests which are unrecorded or were recorded after July 2, 1989. (A copy of Memorandum of Judgment is attached hereto as Exhibit A.)"

The memorandum of judgment was obtained in the previous case of Edward Hines Lumber Co. v. Mark Sisson & Randall Hills Venture, No. 89—L—1420, in the amount of $34,861.73.

On June 18, 1990, Hines filed a motion to amend its answer and a proposed amended answer, as well as a counterclaim to foreclose its mechanic's lien. The counterclaim alleged that Hines had provided materials to Sisson at the subject premises and that $35,811.19 remained due and owing therefor.

On July 3, 1990, the court granted Charter leave to file an amended complaint. The attorneys who had represented Charter filed the amended complaint, on behalf of the substituted plaintiffs, Giampa and Walcott, which alleged that Giampa had obtained an assignment of the mortgage from Charter and had in turn assigned a one-half interest to Walcott. The other allegations of the amended complaint were virtually identical to those of the original pleading.

The court's July 3 order granted Hines 21 days to answer or otherwise plead to the amended complaint. On July 9, 1990, Hines filed its answer and counterclaim. Paragraph 3 of the amended answer referred to both the memorandum of judgment and the mechanic's lien, but did not state whether either or both of these interests were superior to Charter's interest. However, in paragraph 11 of its counterclaim, Hines alleged that its mechanic's lien was superior to Charter's interest in the premises.

The court entered a judgment of foreclosure and sale on the mortgage foreclosure complaint on September 13, 1990. Issues regarding the priority of mechanics' lien claims were reserved for further proceedings. The court subsequently set Hines' mechanic's lien claim for trial on April 30, 1991.

When the case was called for trial, plaintiffs' attorney, Andrew Spiegel, stated that he was ready to proceed. He added that there was "a legal matter that precludes them from proceeding with their claim." Spiegel argued that Hines was bound by the alleged admission in its original answer that its interest was subordinate to Charter's. Hines' attorney contended that the issue should have been raised by way of a motion to dismiss or for summary judgment. The following colloquy then occurred:

> "THE COURT: I have no ruling to make on a non-motion. You have to make motions and they have to be in proper form and you have to comply with the local rules.
>
> MR. SPIEGEL: Okay. We will reserve that issue.
>
> THE COURT: I won't reserve anything. The case will go to trial unless it is settled and I get an order dismissing it."

The trial proceeded.

At the close of the evidence, the trial court directed the parties to submit their closing arguments in writing. Following receipt of the last submission, the court would issue its letter ruling.

Plaintiffs filed a motion for a "directed verdict [*sic*]" in addition to their closing argument. Plaintiffs contended in their motion that Hines was bound by its previous admission that its interest was inferior to that of Charter. Plaintiffs further argued that the lien was invalid because Hines had failed to comply with section 34 of the Act. Plaintiffs maintained that the summons served on Hines in the original foreclosure action acted as a notice pursuant to section 34, which required Hines to thereafter file its lien claim within 30 days or forfeit the lien.

The motion was originally set for hearing July 2, 1991. On that date, the parties entered into a stipulation that "the total lien amount of Hines' claim is $25,791.90 plus interest as set forth in the Illinois Mechanics' Lien Act." On July 18, the court issued its letter ruling finding in favor of Hines in the amount of $25,791.90. Subsequently the court entered a judgment order which, *inter alia*, provided for interest on the judgment at the rate of 10% commencing March 17, 1988.

On August 1, 1991, plaintiffs filed a post-trial motion to vacate or modify the judgment. They contended that the evidence did not support a finding that Hines was entitled to judgment in the amount of $25,791.90. They further argued that Hines was bound by the amount of the judgment it had previously obtained against Sisson in case No. 89—L—1420. Plaintiffs contended that when certain payments Sisson had made were subtracted from the amount of that judgment, the most Hines could recover was $1,484.47. Plaintiffs also challenged the calculation of the interest on the lien.

The court denied plaintiffs' post-trial motion, and plaintiffs filed a timely notice of appeal.

■ Plaintiffs' first contention on appeal is that Hines forfeited its lien by failing to comply with section 34 of the Act. Section 34, entitled "General provisions," provides as follows:

"Upon written demand of the owner, lienor, or any person interested in the real estate, or their agent or attorney, served on the person claiming the lien, or his agent or attorney, requiring suit to be commenced to enforce the lien or answer to be filed in a pending suit, suit shall be commenced or answer filed within 30 days thereafter, or the lien shall be forfeited. Such service may be by registered or certified mail, return receipt

requested, or by personal service." Ill. Rev. Stat. 1989, ch. 82, par. 34.

Plaintiffs contend that the summons in the foreclosure suit was a section 34 notice and that Hines forfeited its lien by failing to file its counterclaim to foreclose its mechanic's lien within 30 days after receipt. Hines responds that plaintiffs waived this contention by failing to raise it until their motion for a directed verdict at the close of all the evidence. Alternatively, it contends that a summons in a pending foreclosure suit is not the equivalent of a section 34 notice. Finally, Hines maintains that it complied with the letter of the law by filing its answer within 30 days of receipt of the summons.

■ We find Hines' third contention to be dispositive of this issue. The plain language of the section requires that "[u]pon written demand *** requiring suit to be commenced *** or answer to be filed in a pending suit, suit shall be commenced or answer filed within 30 days thereafter." (Ill. Rev. Stat. 1989, ch. 82, par. 34.) The summons required only that Hines file an answer within 30 days. It is not disputed that Hines received the summons on March 14 and filed an answer on April 12. Hines complied with the statute. Nothing in section 34 specifies any particular content for the answer which is filed. More importantly, nothing in the language of the section required that Hines assert its lien within 30 days when the summons required only the filing of an answer. When Hines filed its answer April 12, it did all that was required to preserve the lien. It subsequently properly obtained leave of court to file its counterclaim. Plaintiffs do not suggest that the filing of the counterclaim was otherwise untimely.

■ Plaintiffs next contend that Hines is bound by its admission in its original answer that its claim was subordinate to that of Charter. Hines again responds that plaintiffs waived this issue by raising it for the first time orally on the morning of trial. In the alternative, Hines contends that its alleged admission referred only to the memorandum of judgment and not to its mechanic's lien. Again, we agree with Hines.

Plaintiffs correctly note that a party's prior inconsistent sworn statements are formal binding statements of fact. Once a party has made a sworn statement of fact, as in a verified pleading, he cannot contradict such a factual allegation. (*Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 494; *Waldorf v. Marlas* (1977), 56 Ill. App. 3d 358, 362.) Hines did state in its original, verified answer that its "interest is subordinate to the interest of plaintiff." It is clear, however, that this statement refers solely to the judgment obtained in the prior case, not to Hines' me-

chanic's lien claim. Both the sentence before and the sentence after the quoted statement refer to the memorandum of judgment. Paragraph 3 of the answer does not even refer to the mechanic's lien claim. Later, when it filed its counterclaim, Hines expressly alleged that the mechanic's lien had priority over Charter's mortgage. (See Ill. Rev. Stat. 1989, ch. 82, par. 16.) While Hines' answer might have been more artfully drafted, when read in context, it is clear that it admitted only that its interest pursuant to the memorandum of judgment was subordinate to the prior mortgage.

Even if Hines' admission were to be interpreted as encompassing its mechanic's lien claim, Hines would not necessarily be bound by it. A party is not bound by admissions regarding conclusions of law, since it is the province of the trial court to determine, based upon properly admitted evidence, the legal effect of the facts adduced. (*Premier Electrical*, 132 Ill. App. 3d at 495.) The priority of the various interests in the subject property was a question of law for the court to determine, and Hines could not be bound by its alleged admission regarding priorities.

■ Plaintiffs' penultimate contention is that the court erred in determining the amount of the lien. Plaintiffs first allege that Hines is bound by the amount of the judgment it obtained in case No. 89—L—1420. Plaintiffs contend that that amount, $32,543.07, when offset by payments allegedly made by Sisson, results in a net amount due of $1,481.47. Plaintiffs further contend that the court erred in awarding interest at the rate of 10% per annum commencing March 17, 1988.

Hines responds that plaintiffs, in turn, are bound by their stipulation that the amount of the lien was $25,791.90. Hines points out that the judgment in case No. 89—L—1420 was based on a note executed by Sisson *after* most of the payments to which plaintiffs refer were made. Regarding the interest computation, Hines agrees with plaintiffs in part and contends that the court should have awarded interest at the rate of 5% from March 17, 1989, through January 1, 1990, at the rate of 10% from January 1, 1990, until the date of judgment, and at the rate of 9% thereafter.

Plaintiffs initially point out that Hines previously obtained a judgment against Sisson and Randall Hills Venture in case No. 89—L—1420 for $32,543.07. Hines does not dispute that this judgment involved essentially the same materials which are the subject of the instant case. Plaintiffs contend that this amount must be reduced by the amount of certain payments allegedly made by Sisson because "there was no evidence even suggesting the prior judgment reflected these amounts." Plaintiffs' brief contains the following calculation:

"Judgment amount:              $34,861.73

| | |
|---|---|
| "Judgment amount: | $34,861.73 |
| 1st January 4, 1988 payment | -$ 3,256.44 |
| 2nd January 4, 1988 payment | -$ 3,204.65 |
| March 15, 1988 payment | -$21,919.17 |
| December 1, 1988 payment | -$ 5,000.00 |
| Balance | $ 1,481.47." |

Plaintiffs further contend that the $34,861.73 figure includes $2,318.66 in interest which, when subtracted out of the above calculation, results in an overpayment of $837.19.

In response, Hines points out that the prior judgment was based on a note which Sisson executed on October 18, 1988. Three of the payments alleged by plaintiffs occurred prior to that date. Hines contends that it is incredible that Sisson would execute a note which included payments he had already made. When the one payment made after October 18 and interest are subtracted from the judgment amount, the net amount due is $27,543.07, which is more than the amount of the judgment in the instant case and the amount to which the present parties stipulated.

Hines also points out that, in any case, plaintiffs are prohibited from challenging the amount of the lien because they stipulated on July 2, 1991, that the amount of the lien was $25,791.70. Generally, a party cannot dispute on appeal matters to which he has stipulated. (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 874.) In the instant case, the parties entered an agreed order on July 2 which contained the stipulation that the amount of Hines' lien claim was $25,791.70. This was the precise amount which the trial court awarded. Plaintiffs do not contend that the stipulation was unreasonable, was obtained by fraud, or otherwise violates public policy. See *People v. Siems* (1988), 170 Ill. App. 3d 894, 896.

Interestingly, plaintiffs do not directly contend that the trial court's judgment was against the manifest weight of the evidence. Although plaintiffs point to some inconsistencies and contradictions in the testimony, these were merely matters of credibility for the trial court to resolve. (*Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865.) Furthermore, the judgment was supported by the evidence. Hines' yard manager, Thomas White, testified that the total amount of materials delivered to the site was $52,711.07, which figure was supported by invoices introduced into evidence. White further testified that Hines received payments totalling $26,919.17, leaving a balance of $25,791.90. Although White tes-

tified that the invoice amounts were not necessarily accurate, the trial court was entitled to credit his testimony and the exhibits, particularly in light of the stipulation.

Plaintiffs have failed to demonstrate that the stipulation was inaccurate. The amount awarded was supported by the evidence.

■ Plaintiffs' final contention is that the court erred in awarding interest at the rate of 10% per annum from March 17, 1988. Plaintiffs contend that prior to January 1, 1990, the Act provided for interest at the rate of 5%. On January 1, 1990, an amendment became effective which raised the rate to 10%. (Ill. Rev. Stat. 1989, ch. 82, par. 1.) Citing *Treloar v. Hamilton* (1906), 225 Ill. 102, plaintiffs contend that the amendment cannot operate to increase the interest rate on the judgment even after its effective date since to do so would affect contractual rights.

Hines initially concedes that the judgment contains a scrivener's error and that the correct date should be March 17, 1989, and that interest was actually calculated from the latter date. Hines further concedes that it is entitled to interest at the rate of 5% prior to January 1, 1990. Hines contends, however, that interest should accrue at the 10% rate after that date.

In *Noe v. City of Chicago* (1974), 56 Ill. 2d 346, 350, the supreme court considered the question whether an increase in the statutory interest rate could be applied to a judgment which had been entered but not paid prior to the effective date. The court stated:

> "Interest is purely a statutory creation. [Citation.] The legislature may increase, decrease or eliminate the statutory interest rate as long as it does not interfere with rights which have already accrued and vested under a previous statutory rate." (*Noe*, 56 Ill. 2d at 350.)

The court held that the new interest rate should be applied as of the effective date of the amendment.

We hold that *Noe* governs the instant case. Thus, interest should have been awarded at the 5% rate from March 17, 1989, through January 1, 1990, at the 10% rate thereafter until the date of judgment, August 1, 1991, and at the statutory post-judgment rate of 9% thereafter. Application of the above rates produces a total of $5,105.38 in prejudgment interest. Accordingly, we exercise our power pursuant to Supreme Court Rule 366 to "make any order that ought to have been given or made" (134 Ill. 2d R. 366(a)(5)) to modify the judgment to reflect $5,105.38 in prejudgment interest and post-judgment interest at the rate of 9% from August 1, 1991, until payment.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

INGLIS, P.J., and DUNN, J., concur.