# Illinois Official Reports

## Appellate Court

---

***In re Marriage of Vondra*, 2016 IL App (1st) 150793**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DAVID VONDRA, Petitioner-Appellee, and MIKA J. VONDRA, Respondent-Appellant (Eugenia Sabadaszka, Plaintiff; and David Vondra, Individually and as Trustee of the David Vondra Revocable Trust, Dated November 20, 2007, Defendant). |
| District & No. | First District, First Division<br>Docket No. 1-15-0793 |
| Filed | July 18, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 10-D-10580, 12-CH-06686 cons.; the Hon. Edward A. Arce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul L. Feinstein, of Chicago, for appellant.<br><br>Deutsch, Levy & Engel, Chtrd., of Chicago (Melvyn H. Berks and Ryan D. Janski, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1　　Respondent, Mika J. Vondra, appeals the circuit court's judgment in a marriage dissolution proceeding, specifically the court's characterization and distribution of various assets pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 2014)). On appeal, respondent contends (1) she is entitled to the reimbursement of $253,000 she contributed in nonmarital funds to pay down the mortgage on the marital residence and (2) the trial court erred in classifying respondent's Madison Avenue IRA No. 6863 (IRA 6863) and the American Enterprise CD No. 6714 (6714 CD) as marital property. For the following reasons, we affirm.

¶ 2　　　　　　　　　　　　　　　　　JURISDICTION

¶ 3　　The trial court entered the final judgment for dissolution of marriage on February 17, 2015. Respondent filed her notice of appeal on March 18, 2015. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4　　　　　　　　　　　　　　　　　BACKGROUND

¶ 5　　The following facts are relevant to this appeal. The parties were married on October 29, 1988, and two children were born during the marriage. Both were emancipated at the time of the dissolution proceedings. Petitioner filed his petition for dissolution of marriage on October 28, 2010, and a trial was held in which the court received evidence and heard testimony and arguments of counsel. Petitioner is employed as a documentation engineer earning approximately $92,000 per year. Respondent works several part-time jobs earning approximately $25,000 per year. During the marriage, the parties owned a residence located at 703 Nichols Road in Arlington Heights, Illinois. An appraisal determined that the residence was worth $480,000 and had a mortgage balance of $24,936.16 at the time of trial.

¶ 6　　At trial, respondent testified that in July of 1996, she received $200,000 which she placed into a First Security account (Sabadaszka gift). The amount consisted of a $175,000 inheritance from her father and a $25,000 gift from her mother. She testified that she did not intend any gift to petitioner when she received this money. Respondent testified that she deposited $175,000 from the First Security account into a joint account to pay down the mortgage on the Nichols Road house, which she paid the following day. She informed petitioner of her actions. The payment, processed on July 29, 1996, reduced the mortgage balance from $310,950 to $135,950.

¶ 7　　Respondent also received approximately $167,000 after the death of family friend Barbara Ganzert, which she placed in a trust account in her name (Ganzert funds). From this inheritance, respondent used $78,000 to further pay down the mortgage on the Nichols Road house. These payments were documented in respondent's Exhibit 66 which showed the mortgage payment history on the house. Respondent testified that she did not intend any gift to petitioner when she made these payments from her trust account. Petitioner, however, had no recollection that respondent received the Sabadaszka gift or the Ganzert funds and did not recall whether respondent paid down the mortgage using those moneys.

¶ 8        Evidence presented at trial showed that the 6714 CD was issued to "MIKA J. VONDRA or DAVID W. VONDRA" on September 19, 2009, in the amount of $144,706. Respondent testified that she gave petitioner permission to transfer $141,000 from her trust account to the 6714 CD. On March 19, 2011, respondent cashed the certificate and deposited $149,056.22 into a savings account in her name at Chase Bank. Respondent testified that the 6714 CD funds came from a combination of money from the Sabadaszka gift and money she was holding for her mother. The parties stipulated that after respondent cashed in the certificate, petitioner did not have access to the funds. To rebut the presumption that the 6714 CD was marital property, respondent submitted evidence that the funds used to purchase the CD came from her trust account.

¶ 9        Also presented into evidence were a Madison Avenue Securities IRA in petitioner's name (No. 6855) with a value of $42,356.03 and a Madison Avenue Securities IRA in respondent's name (No. 6863) with a value of $79,189.61. Respondent testified that her Madison Avenue IRA came from her employment at Urban Development, where she ceased working after her child was born in 1991. She testified that she had this IRA prior to her marriage and, although she made some contributions to it during the marriage, she had never taken money out.

¶ 10        At the proceedings, respondent made a claim for the reimbursement of $253,000, representing the amount of nonmarital funds she used to pay down the mortgage. The trial court determined that the funds comprising the Sabadaszka gift and Ganzert funds were nonmarital property pursuant to section 503(a)(1) of the Act. It denied respondent's claim, however, finding that pursuant to section 503(c)(1) and (2), she transmuted those funds into marital property by "(a) depositing the Sabadaszka Gift into the joint checking account and paying down the mortgage balance and (b) Using the Ganzert funds to pay down the mortgage balance on the marital residence."

¶ 11        The trial court also determined that the 6714 CD was marital property because it was originally opened "under both parties' names." Although the trial court found it "probable that some or even most of the funds" used to purchase the 6714 CD came from respondent's nonmarital trust account, respondent failed to rebut the presumption that the 6714 CD was marital property. It reasoned that "[t]he act of purchasing [the 6714 CD] and placing ownership of that certificate in the parties' joint names creates the presumption of a gift to the marital estate. There is frankly no evidence which rebuts this presumption." The trial court also noted that the 6714 CD was held jointly from September 19, 2009, to March 19, 2011. Regarding the parties' Madison Avenue IRAs, the trial court's order stated that "[t]he parties stipulate that the entire interest in the plan is marital property subject to division by the court." Respondent filed her timely appeal.

¶ 12                                ANALYSIS

¶ 13        Respondent first contends that the trial court erred in denying her reimbursement claim for the $253,000 she used from the Sabadaszka gift and Ganzert funds to pay down the mortgage on the marital residence during the parties' marriage. The trial court determined that all funds from the marital residence were marital property. A reviewing court will not disturb the trial court's classification of property unless its determination is against the manifest weight of the evidence. *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 861 (1998). A ruling is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the findings are

unreasonable, arbitrary, or not based on the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992).

¶ 14    Section 503(a) of the Act provides that "[f]or purposes of the Act, 'marital property' means all property *** acquired by either spouse subsequent to the marriage." 750 ILCS 5/503(a) (West 2014). However, "property acquired by gift, legacy or descent" or property acquired in exchange for such property is nonmarital property. 750 ILCS 5/503(a)(1) (West 2014). Furthermore, "[w]hen marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution." 750 ILCS 5/503(c)(1) (West 2014). Transmutation is based on the presumption that the owner of the nonmarital property intended to make a gift of it to the marital estate. *In re Marriage of Benz*, 165 Ill. App. 3d 273, 279 (1988). Thus, the placement of nonmarital property in joint tenancy or other form of joint ownership with a spouse "will raise a presumption that a gift was made to the marital estate, and the property will become marital property." *Id.* at 280. The donor spouse, however, may rebut this presumption with clear and convincing evidence. *Id.*

¶ 15    Here, the trial court properly found that the Sabadaszka gift and Ganzert funds were respondent's nonmarital property. It also properly found that by using those moneys to pay down the mortgage on the jointly held marital residence, a presumption arose that respondent intended to make a gift to the marital estate. See *In re Marriage of Durante*, 201 Ill. App. 3d 376, 382 (1990) (use of nonmarital funds to purchase ownership in a residence which was conveyed to both parties as joint tenants created a rebuttable presumption of transmutation and gift to the marital estate). The question is whether respondent presented sufficient evidence to rebut this presumption.

¶ 16    The only evidence respondent presented to rebut the presumption of transmutation is that she did not intend for the payments to be gifts. However, although respondent testified that she told petitioner of her payments, she did not state that she informed him at the time that she did not intend for the payments to be gifts to the marital estate. Petitioner testified that he had no knowledge of whether respondent received the Sabadaszka gift or the Ganzert funds or whether she paid down the mortgage using money from those nonmarital funds. Such evidence is insufficient to overcome the presumption of transmutation. See *In re Marriage of Hacker*, 239 Ill. App. 3d 658, 664-65 (1992) (presumption not rebutted where the only evidence presented was testimony that at the time the parties purchased the marital residence, respondent did not intend to make a gift of his contribution); *Durante*, 201 Ill. App. 3d at 382 (presumption not rebutted where respondent testified that although she placed her nonmarital property in joint tenancy, she intended for the property to stay in the family).

¶ 17    Respondent, however, argues that she sufficiently rebutted the presumption because the nonmarital funds she used were traceable and she placed the funds in a joint account temporarily as a conduit to make the payments. As support, respondent cites a list of cases, including *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 673 (2008), in which this court held that "[a]lthough the placement of nonmarital funds into a joint checking account may transmute the nonmarital funds into marital property [citations], nonmarital funds that are placed into a joint account merely as a conduit to transfer money will not be deemed to be transmuted into marital property. [Citations.]" In *Heroy* and the other cases cited in respondent's brief, the party took nonmarital funds, placed those funds temporarily in a joint

- 4 -

account and then used the funds to purchase nonmarital property. These cases are inapposite. Unlike *Heroy*, respondent here took nonmarital funds and used those funds to pay the mortgage on property jointly held by both parties. In this situation, a rebuttable presumption arises that the nonmarital property transmutes into marital property. *Benz*, 165 Ill. App. 3d at 280. As discussed above, respondent did not rebut the presumption with clear and convincing evidence. We find that the trial court's denial of her claim for reimbursement was not against the manifest weight of the evidence.

¶ 18    Likewise, respondent has failed to rebut the presumption that the 6714 CD was marital property. Although respondent testified that the money used to purchase the 6714 CD came from her nonmarital funds (Sabadaszka gift and money from respondent's mother), the CD was issued to "MIKA J. VONDRA or DAVID W. VONDRA." The CD was jointly held by the parties for almost two years until March 19, 2011, when respondent cashed the certificate and deposited $149,056.22 into a savings account in her name at Chase Bank. To rebut the presumption that the 6714 CD was marital property, respondent presented evidence showing that the funds used to purchase the CD came from her trust account, and she testified that she did not intend a gift to the marital estate; instead, petitioner purchased the CD on his own. As discussed above, the use of nonmarital funds to purchase jointly held property during the marriage does not rebut the presumption; rather, it creates a rebuttable presumption of a gift to the marital estate. See *Durante*, 201 Ill. App. 3d at 381-82; *Benz*, 165 Ill. App. 3d at 280. Furthermore, respondent testified that she gave permission for petitioner to purchase the jointly held 6714 CD using funds from her trust account. Although respondent contends that she did not intend to make a gift, it is the function of the trial court to resolve conflicting testimony, assess the credibility of the witnesses, and give weight to their testimony. *Benz*, 165 Ill. App. 3d at 280. Here, the trial court resolved any conflicts on this issue in favor of petitioner, and its finding is not against the manifest weight of the evidence.

¶ 19    Respondent also argues that the proceeds from the 6714 CD "no longer exist[ ]" and the trial court erred in distributing proceeds that no longer exist. Respondent presents this argument without citation to authority or more extensive analysis in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) (argument "shall contain the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on"). In her reply brief respondent does cite two cases, with no analysis, that we find are distinguishable from this case. In any event, points not argued in respondent's main brief "are waived and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). For these reasons, the trial court's designation of the 6714 CD as marital property was not against the manifest weight of the evidence.

¶ 20    Respondent's final contention is that the trial court erred in finding that, by stipulation of the parties, respondent's Madison Avenue IRA from her former employer was marital property. She argues that she acquired the IRA prior to her marriage and she never took any distributions or loans from the account. She further contends that no stipulation can be found in the record, proving that the stipulation never existed.

¶ 21    In general, "a party cannot dispute on appeal matters to which he has stipulated." *Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.*, 233 Ill. App. 3d 574, 580 (1992). In reviewing the parties' arguments on the issue in the record, there was a question as to whether a portion of respondent's Madison Avenue IRA was marital property. The parties argued the issue in closing arguments, but the trial court did not make a determination at that time.

Instead, the court informed the parties that it would not make any rulings without first conducting a hearing on the fee petitions which it would do at a future date. We presume the trial court held those hearings and made its rulings, although no transcript of the proceedings is in the record. Respondent as appellant has the duty to present a complete record on appeal, "and in the absence of an adequate record, it will be presumed that the trial court's judgment conforms to the law and has a sufficient factual basis." *Salazar v. Wiley Sanders Trucking Co.*, 216 Ill. App. 3d 863, 868 (1991). The trial court's February 17, 2015, order states that the parties stipulated that their respective Madison Avenue IRAs were marital property. Since respondent failed to include a record for the proceeding in which that stipulation may have occurred, any resulting doubt is resolved against respondent as appellant. *Id.*

¶ 22    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 23    Affirmed.